**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CONNY MORITZ,

      Petitioner,               CASE NO. 2:07-CV-15369

v.                            HONORABLE ARTHUR J. TARNOW
                               UNITED STATES DISTRICT JUDGE

JEFFREY WOODS,

      Respondent.

_____/

**OPINION AND ORDER ON REMAND CONDITIONALLY**
**GRANTING IN PART AND DENYING IN PART**
**THE PETITION FOR WRIT OF HABEAS CORPUS**

This matter is on remand from the United States Court of Appeals for the

Sixth Circuit.  Conny Moritz, ("Petitioner"), confined at the Chippewa Correctional

Facility in Kincheloe, Michigan, filed a petition for writ of habeas corpus through

counsel Margaret Sind Raben pursuant to 28 U.S.C. § 2254, challenging his

conviction for kidnapping, M.C.L.A. 750.349; first-degree home invasion, M.C.L.A.

750.110a(2); carrying a dangerous weapon with unlawful intent, M.C.L.A.

750.226; four counts of assault with a dangerous weapon, M.C.L.A. 750.82; and

possession of a firearm in the commission of a felony [felony-firearm], M.C.L.A.

750.227b.  Petitioner is serving sentences of eighteen years, nine months to fifty

years on the kidnapping conviction, seven years, eleven months to twenty years

on the home invasion conviction, two to five years on the carrying a dangerous

weapon conviction, two to four years on the assault with a dangerous weapon

convictions, and two years on the felony-firearm conviction.

This Court finds that petitioner's Sixth Amendment right to confrontation

was violated when the trial court permitted an incarcerated witness' preliminary

examination testimony to be admitted into evidence after declaring him

unavailable to testify at trial, when no good faith efforts had been made to obtain

the presence of this witness.  The petition for writ of habeas corpus is therefore

**CONDITIONALLY GRANTED.**  The Court denies the petition with respect to

petitioner's other claims.

## I.  Background

Petitioner was convicted following a jury trial in the Macomb County Circuit

Court.  The facts of this case are from the Sixth Circuit's decision remanding to

this Court to rule on issues not decided:

> Moritz's underlying conviction arose from a series of events beginning
> in November 2002, when Moritz's wife, Donna, left their home in
> Tennessee and moved to Michigan.  With her, Donna also took her
> eight-year-old son, Salvatore, who was not related to Moritz.   In
> December 2002, Moritz traveled to Michigan along with his own two
> children, Tina and Kevin, to bring Donna back to Tennessee.  After
> arriving at the apartment where Donna was staying, Moritz allegedly
> threatened Donna, Salvatore, and Donna's neighbors with a gun and
> forced Donna and Salvatore into his car.  Once in the car, a struggle
> ensued during which Moritz fired the gun, injuring Donna, Salvatore,
> and Tina.  At the end of this scuffle, Moritz fell out of the car, at which
> point the remaining passengers drove to a nearby hospital for
> treatment. Though Salvatore and Donna were seriously injured, no one
> was fatally wounded during this incident.

*Moritz v. Lafler*, 525 Fed. Appx. 277, 278-79 (6th Cir. 2013).

The jury deliberated for over three days. (Tr. 7/11/03, pp. 93-96, Tr. 7/14/03, pp. 3-13; Tr. 7/15/03, pp. 3-13).  On the third day of deliberations, the jurors indicated that they were deadlocked and could not reach a verdict. (Tr. 7/15/03, p. 3).  The judge read the jurors a deadlocked jury instruction. (*Id.,* pp. 6-8).  The jurors found petitioner guilty of the charges he challenges in his conviction.  The jurors acquitted petitioner of one count of kidnapping with respect to Salvatore Badalamenti, five counts of felony-firearm, three counts of assault with intent to murder, and one count of assault with a dangerous weapon. (*Id.,* pp. 9-10).

Petitioner was sentenced on August 13, 2003 to two hundred and eighty give months to fifty years on the kidnapping conviction, one hundred and forty months to twenty years on the home invasion conviction, two to five years on the carrying a weapon with unlawful intent conviction, two to four years on the assault with a dangerous weapons convictions, and two years on the felony-firearm conviction.

Petitioner was re-sentenced by the trial court on August 3, 2004 to essentially the same sentences.

3

Petitioner's conviction was affirmed on appeal, but his case was remanded for re-sentencing. *People v. Moritz,* No. 251265; 258436; 2006 WL 2220966 (Mich.Ct.App. August 3, 2006); [1] *lv. den.* 477 Mich. 975, 725 N.W.2d 21 (2006).

Petitioner was re-sentenced on November 16, 2006 to eighteen years, nine month to fifty years on the kidnapping conviction, and seven years, eleven months to twenty years on the home invasion conviction.  Petitioner's sentences on the other offenses remained the same.  The Michigan appellate courts affirmed petitioner's re-sentencing. *People v. Moritz,* No. 275210 (Mich.Ct.App. January 10, 2008); *lv. den.* 480 Mich. 1190, 747 N.W.2d 302 (2008).

While petitioner's second appeal was pending in the state courts, petitioner filed an application for writ of habeas corpus, which was held in abeyance pending the completion of petitioner's re-sentencing appeals. *See Moritz v. Lafler,* No. 2:07-CV-15369, 2008 WL 62458 (E.D.Mich. Jan. 3, 2008).  This Court later amended its order and held the petition in abeyance to permit petitioner to seek post-conviction review in order to exhaust additional claims. *Moritz v. Lafler*, No. No. 2:07-CV-15369, 2008 WL 783751 (E.D. Mich. March 19, 2008).

Petitioner filed a post-conviction motion for relief from judgment, which the trial court denied. *People v. Moritz,* No. 2003-0991-FC (Macomb County Circuit Court, July 2, 2008).  The Michigan appellate courts denied petitioner's post-

---

[1] In Docket # 251265, petitioner appealed his convictions and in Docket # 258436, petitioner appealed his first re-sentencing.  The Michigan Court of Appeals consolidated the appeals. (See this Court Dkt. ## 24-16; 24-18).

4

conviction appeal. *People v. Moritz,* No. 286628 (Mich.Ct.App. March 4, 2009); *lv.*

*den.* 485 Mich. 891, 772 N.W.2d 410 (2009).

On December 4, 2009, this Court reinstated the petition to the Court's

active docket and permitted petitioner to file an amended petition for writ of

habeas corpus, seeking habeas relief on the following grounds:

> I. Petitioner's Sixth Amendment right to confront the witness against him at trial was violated when the trial court found a witness unavailable for trial and allowed that witness' preliminary examination testimony to be read to the jury.

> II. The court's imposition of sentence based on facts that were not found by a jury beyond a reasonable doubt violates the Fifth and Sixth Amendments of the United States Constitution, contrary to *Blakely v. Washington*, *U.S. v. Booker*, and *Apprendi.*

> III. The trial court abused its discretion in ordering consecutive sentences.

> IV. Petitioner is entitled to re-sentencing before a different judge where the sentencing judge continuously refuses to allow Petitioner allocution before pronouncing sentence.

> V. The trial court violated Petitioner's Sixth Amendment constitutional right to counsel of choice when it replaced defense counsel without obtaining Petitioner's consent or waiver.

> VI. Petitioner was denied his Sixth and Fourteenth Amendment constitutional right to counsel where his retained counsel was absent at a critical stage.

> VII. Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel where his trial counsel failed to (A) present the defenses that Petitioner had legal authority over complainant and consent; (B) move for the introduction of complainant's prior false allegations, and (C) do the above which, when considered cumulatively, prejudiced the Petitioner.

5

VIII.  Petitioner was denied his Fourteenth Amendment due process right to a fair trial where the Prosecutor knowingly used false and perjured testimony.

IX.  The Due Process Clause of the Fourteenth Amendment was violated where the Prosecutor failed to disclose favorable evidence.

X. Petitioner's due process rights were violated where his sentence was based on inaccurate information in violation of the Fourteenth Amendment which entitles him to re-sentencing.

XI.  Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of appellate counsel where all three of his appellate counsels failed to raise habeas claims V through X which establishes good cause for Petitioner's failure to raise those issues on direct review.

On February 21, 2012, this Court granted petitioner a conditional writ of habeas corpus on his fifth and sixth claims, finding that petitioner did not knowingly and intelligently waive his Sixth Amendment right to be represented by his retained counsel during a critical stage of his trial, namely, when the deadlocked jury was given a supplemental jury instruction to continue with their deliberations. *Moritz v. Woods*, 844 F. Supp. 2d 831 (E.D. Mich. 2012).  Because the Court granted relief on these claims, the Court declined to address petitioner's remaining claims. *Id.*

The Sixth Circuit subsequently reversed the grant of the writ of habeas corpus and remanded the case to this Court for consideration of petitioner's remaining claims. *Moritz v. Lafler*, 525 Fed. Appx. at 286-87.  The United States

6

Supreme Court denied a petition for writ of certiorari. *Moritz v. Smith,* 134 S. Ct. 424 (2013).

On November 13, 2013, the case was reopened to the Court's active docket, the caption was amended, and deadlines were set for the filing of supplemental briefs. On December 16, 2014, petitioner's original counsel was permitted to withdraw and petitioner's current counsel was appointed on December 24, 2014. After several extensions of time, supplemental briefs have been submitted by the parties.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme

7

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs

when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may

not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

**A.  Claim # 1.  The Confrontation Clause claim.**

Petitioner's Sixth Amendment right to confrontation was violated when the

trial court judge declared a witness named Carl Cooper unavailable to testify

after he had been arrested by the police in Southgate, Michigan on a probation

violation. The court permitted Mr. Cooper's preliminary examination testimony to

be read into the record even though there had been no good faith efforts by the

prosecutor to produce Mr. Cooper for trial.  The use of Mr. Cooper's preliminary

examination testimony violated petitioner's Sixth Amendment right to

confrontation.

Petitioner raised this claim on his direct appeal. The Michigan Court of

Appeals rejected the claim:

[o]n the third day of trial, the judge stated:

8

> Apparently, the prosecution has one witness left. *His name has come up plenty of times, Mr. Carl Cooper.* Unfortunately, Mr. Cooper is indisposed as we know, it sounds like he was picked up by Southgate Police, a probation violation. Optimistically, to try and get him here today, I don't even really see it. It would have to be tomorrow. I told counsel I intend to proceed, we have the benefit of a preliminary examination transcript where Mr. Cooper was called as a witness, was subject to cross-examination. I'm finding that Mr. Cooper is unavailable as a witness, and as a result, that's why we have exam transcripts, we might as well use them.

Before reading Cooper's preliminary examination testimony into the record, the trial court informed the jury that Cooper had been arrested for driving with a suspended license and that "to get him over here today would be a massive product" and that the court was going to instead use his preliminary examination transcript. We hold that the trial court correctly ruled that Cooper was unavailable.

*People v. Moritz*, No. 251265, 2006 WL 2220966, at * 2 (emphasis added).

Interestingly, in a footnote, the Michigan Court of Appeals conceded:

While we would have preferred the trial court to make a more thorough record with regard to the logistical difficulties of obtaining Cooper's presence at trial, this failure by the trial court was harmless because Cooper was unexpectedly incarcerated in another jurisdiction and, as the prosecutor notes, the jury acquitted defendant of the crimes to which Cooper was a witness.

*Id.,* at n. 1.

"The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987).

The Confrontation Clause thus envisions:

9

> "[a] personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

*Ohio v. Roberts*, 448 U.S. 56, 63-64 (1980); *abrogated on other grds by Crawford v. Washington*, 541 U.S. 36 (2004)(*quoting Mattox v. United States*, 156 U.S. 237, 242–243 (1895)).

Although an exception to the confrontation requirement exists where a witness is unavailable and gave testimony at previous judicial proceedings against the same defendant which was subject to cross-examination, this exception is inapplicable "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968). The Supreme Court in *Barber* noted that the prosecution failed to make this showing where it "made absolutely no effort to obtain the presence of [the witness] at trial." *Id.,* at 723. Although the witness in *Barber* was incarcerated in another state, the Supreme Court noted the availability of various judicial processes to compel the production of that witness at trial. *Id.,* pp. 723-24. "[S]o far as this record reveals, the sole reason why [the witness] was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly." *Id.,* p. 725.

10

Michigan, in fact, has a judicial process for obtaining the presence of an incarcerated person to be produced as a witness. M.C.L.A. 600.4385(1) indicates that:

> The judges of every court of record have the power to issue a writ of habeas corpus for the purpose of bringing before that court, or another court or body authorized to examine witnesses, any prisoner who may be detained in any jail or prison within this state, to be examined as a witness.

The Michigan Court of Appeals' determination that the prosecution made a good faith effort to obtain Cooper's presence at trial was unreasonable. The state made absolutely no effort to obtain Cooper's presence at petitioner's trial. Unlike the witness in *Barber,* who was incarcerated 225 miles away in another state, Cooper was locked up at the Southgate Police Department, which was 39 miles and about 45 minutes away from the Macomb County Circuit Court. [2] The trial court could have issued a writ of habeas corpus pursuant to M.C.L.A. 600.4385 to obtain Mr. Cooper's presence at trial. The trial court acknowledged that Mr. Cooper could be present the next day.

Because there was an available means to obtain Mr. Cooper at petitioner's trial and no efforts were made to produce him, the Michigan Court of Appeals' determination that Mr. Cooper was unavailable to testify at petitioner's trial, so as to permit the introduction of his preliminary examination testimony,

---

[2].www.mapquest.com/directions/list/1/us/mi/southgate/48195/14710-reaume-pkwy-42.203440,-83.208175/to/us/mi/mount-clemens/48043/40-n-main-st-42.597804,-82.877483

was an unreasonable application of Supreme Court law that entitles petitioner to habeas relief. *See Brumley v. Wingard*, 269 F.3d 629, 641 (6th Cir. 2001).  The sole basis for allowing Mr. Cooper's preliminary examination testimony in *lieu* of his live testimony was based on the inconvenience to the trial court in having to put the trial over for one day.  This is an insufficient basis to find a witness unavailable for purposes of admitting his or her prior testimony. See *Brumley,* 269 F. 3d at 644, n. 10 (state court's admission of incarcerated witness' videotaped testimony, without requisite prior finding that witness was constitutionally unavailable, based on evidence's reliability and costs and inconvenience of obtaining witness' presence at trial, was an unreasonable application of clearly established Supreme Court precedent interpreting Confrontation Clause, and thus supported federal habeas relief).  Petitioner's right of confrontation should not have "dispensed with so lightly." *Barber,* 390 U.S. at 725.

The question for this Court is whether petitioner is entitled to habeas relief on his claim.

In *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995), the U.S. Supreme Court held that when a federal court judge in a habeas proceeding is in "grave doubt" about whether a trial error of federal constitutional law had a substantial and injurious effect or influence in determining the jury's verdict, the error is not harmless and the petitioner must win.  The focus in such a situation is not merely

whether there is enough evidence to support the result, apart from the phase affected by the error. It is rather whether the error itself has substantial influence. If so, or a judge is left in grave doubt, the conviction cannot stand. *O'Neal,* 513 U.S. at 438. Only if a federal habeas court can say with certainty that a trial error had little or no impact on the judgment, should the judgment stand. *See Barker v. Yukins*, 199 F. 3d 867, 874 (6th Cir. 1999).

The transcript of Mr. Cooper's preliminary examination included Mr. Cooper's testimony as to Count 1 (forcible kidnapping of Donna Moritz)(Tr. 7/10/03, pp. 54, 63, 65); Count 2 (forcible kidnapping of Salvatore Badalamenti) (*Id.,* pp. 55, 63); Count 4 (carrying gun w/unlawful intent)(*Id.,* pp. 55, 63-64): Counts 5, 6, and 19 (assault with a dangerous weapon as to Donna Moritz, Salvatore Badalamenti and Carl Cooper)(*Id.,* pp. 56-58, 67-69, 71, 73); Counts 13-15 (assault with intent to murder as to Donna Moritz, Salvatore Badalamenti and Tina Moritz)(*Id.*, pp. 56, 69, 71, 73); and Counts 9-12, 16-18 and 20 (Felony Firearm as to the crimes charged in Counts 5-8).

Although respondent and the Michigan Court of Appeals contend that the admission of Cooper's out-of-court testimony was harmless, the prosecutor made numerous statements about Cooper's testimony during her closing argument and its tie-breaking importance to the jury's deliberations and their evaluation of the contradictory testimony of Defendant and Donna Moritz:

13

. . Now, there's a few versions of what took place here . . .Several things that we do know for sure. . . they arrived here on December 7, the defendant and his two children.  They stop at Carl Cooper's in Detroit, they switch to his truck, then they go to the Badalamenti home, the apartments here in Macomb County, Harrison Township.  The defendant goes in and he comes out with Donna Moritz and Salvatore Badalamenti. . .

(Tr. 7/11/03, pp., 16-17).

The prosecutor continued:

We have Carl Cooper in the driver's seat, we have the defendant in the passenger seat.  In the back behind the driver, we have Kevin Moritz, next to him is Tina Moritz, and then we have Donna Moritz, and . . . Salvatore Badalamenti . . We know there is a gun, obviously, we've heard different versions as to how that gun got there and who brought it in . . . We know there is a struggle over that gun inside of that truck. Who's struggling over it seems to differ from her version. But we know Donna Moritz and the defendant, minimum, are struggling over that gun.  In the procession, depending on whose version, either during that struggle or right after that struggle, Tina Moritz is shot. . .

(*Id.,* p. 17).

The prosecutor made numerous statements acknowledging that this was a

credibility contest between petitioner and Donna Moritz. (*Id.,* pp. 17-26).

The most significant evidence of the importance of Carl Cooper as an

impartial, tie-breaking witness came in these lengthy remarks by the prosecutor:

Now, in the process of deciding what happened here, there are a lot of versions of what took place, a lot of different things to consider.  A lot of people to evaluate and consider.  You're going to wish you had had someone else that was there. You've got Donna Moritz, Salvatore Badalamenti. . . And you've got Tina Moritz and Kevin Moritz, brother and sister, children of the defendant. . .Those two ways are not going to match, and they don't.  That's understandable.  You're back there

14

thinking, I wish I had someone else to tell me what happened. Someone without those types of bias. You do, you've got two, Carl Cooper, . . . Willie Whitfield. . .*Carl's got no reason to lie.* And their versions of what happened tell you that the defendant's version is a lie. . . . Whose version stays consistent every detail they were asked about? Their main story stayed the same.  Whose version of what happened changed? Who was not consistent?

(*Id.,* pp. 28-29)(emphasis added).

In her rebuttal argument, the prosecutor referred to the transcript of Mr.

Cooper's testimony and quoted Mr. Cooper:

. . .Carl told him too, with the gun, before somebody got hurt. . . Regarding Carl Cooper, he told you, ah, "if it were me, I wouldn't leave any witnesses." That's in his mind.  That is fear.

(*Id.,* p. 63)(quotation marks added).

This Court has grave doubts about whether the admission of Mr. Cooper's preliminary examination transcript testimony, in violation of petitioner's right to confrontation, had a substantial and injurious effect or influence on the jury's verdict.  Mr. Cooper's preliminary examination transcript was an inadequate substitute for his live testimony.  In the absence of his live testimony, there was no way for the jury to be able to judge Mr. Cooper's demeanor or credibility. "[T]here is something deep in human nature that regards face-to-face confrontation between accused and accuser as "essential to a fair trial in a

15

criminal prosecution." *Coy v. Iowa,* 487 U.S. 1012, 1017 (1988)(quoting *Pointer v. Texas,* 380 U.S. 400, 404 (1965)). [3]

In order for this Court to find the admission of Mr. Cooper's preliminary examination testimony to be harmless, it would have to believe only the prosecution's evidence but discredit the defense evidence in this case. *Barker,* 199 F. 3d at 874.  However, it is neither the proper role for a state appellate court, nor for this Court, "[t]o stand in the place of the jury, weighing competing evidence and deciding that some evidence is more believable than others." *Id.* at 874-75.  Rather, it is for the jury to make that determination, unhindered by any Confrontation Clause violation.

Moreover, the fact that the jury deliberated for three days and was at one point deadlocked is further evidence that the admission of Mr. Cooper's preliminary examination testimony was not harmless.  The jury might very well have reached a different conclusion regarding petitioner's guilt if Mr. Cooper testified before them in person.

----

[3]  The Supreme Court in *Coy* quoted President Dwight D. Eisenhower, who "once described face-to-face confrontation as part of the code of his hometown of Abilene, Kansas.  In Abilene, he said, it was necessary to "[m]eet anyone face to face with whom you disagree.  You could not sneak up on him from behind, or do any damage to him, without suffering the penalty of an outraged citizenry.... In this country, if someone dislikes you, or accuses you, he must come up in front. He cannot hide behind the shadow." *Coy,* 487 U.S. at 1018 (quoting Press release of remarks given to the B'nai B'rith Anti–Defamation League, November 23, 1953).

Petitioner is therefore entitled to habeas relief, because the Michigan

Court of Appeals' decision to affirm the admission of Mr. Cooper's preliminary

examination testimony was an unreasonable application of *Barber v. Page,*

*supra.* The respondent failed to demonstrate that the admission of this

testimony was harmless.

Because the Court is granting petitioner a writ of habeas corpus on his

first claim, the Court will only briefly address petitioner's remaining claims. *See*

*Brown v. Palmer,* 358 F. Supp. 2d 648, 656 (E.D. Mich. 2005).

**B.  Claims # 2, # 3, # 4, and # 10. The sentencing claims.**

Petitioner raises several challenges to his sentence.

Petitioner contends that the trial court judge violated his Sixth Amendment

right to a trial by jury by using factors that had not been submitted to a jury and

proven beyond a reasonable doubt or admitted to by petitioner when scoring the

Michigan Sentencing Guidelines.

On June 17, 2013, the United States Supreme Court ruled that any fact

that increases the mandatory minimum sentence for a crime is an element of the

criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v.*

*United States*, 133 S. Ct. 2151, 2155 ( 2013).  *Alleyne* is an extension of the

Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and

*Blakely v. Washington*, 542 U.S. 296 (2004), in which the U.S. Supreme Court

held that any fact that increases or enhances a penalty for a crime beyond the

17

prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.  In reaching this conclusion, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), in which the Supreme Court had held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder. *Alleyne,* 133 S. Ct. at 2157-58.

At the time of petitioner's conviction and sentence, *Harris* was the law.  In addition, *Alleyne* has not been made retroactive to cases on collateral review. *See In re Mazzio*, 756 F.3d 487, 489-90 (6th Cir. 2014).  Although the Michigan Supreme Court recently relied on *Alleyne* to hold that Michigan's Sentencing Guidelines scheme violates the Sixth Amendment right to a jury trial, *See People v. Lockridge,* 498 Mich. 358; 870 N.W.2d 502 (Mich. 2015), a federal district court may only grant habeas relief if it finds that the state court's decision was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the *Supreme Court of the United States*' or 'was based on an unreasonable determination of the facts in light of the evidence that was presented in the State court proceeding.'" *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir.2012)(quoting 28 U.S.C. § 2254(d))(emphasis added).  In addition, "[t]he law in question must have been clearly established at the time the state-court decision became final, not after." *Id.* (citing *Williams v. Taylor*, 529 U.S. at 380). Because the Supreme Court at the time of petitioner's conviction did not require

18

that facts which increase a criminal defendant's minimum sentence be proven

beyond a reasonable doubt, petitioner is not entitled to habeas relief on his

second claim. *See Gibson v. Tribley*, No. 10-13364, 2013 WL 3353905, at *8

(E.D. Mich. July 3, 2013)*.* [4]

In his third claim, petitioner alleges that the trial court erred in imposing a

consecutive sentences on the home invasion conviction. [5]

The application of state sentencing laws governing consecutive

sentencing does not present a federal constitutional question but merely an

issue of state law which is not cognizable on habeas review. *See Coleman v.*

*Koloski,* 415 F. 2d 745, 746 (6th Cir. 1969); *See also Nunez v. Brunsman,* 886 F.

Supp. 2d 765, 770 (S.D. Ohio 2012).  Petitioner is not entitled to relief on his

third claim.

In his fourth claim, petitioner contends that he was denied his right to

allocution at his re-sentencing.

---

[4]  Under Michigan law, only the minimum sentence must presumptively be
set within the appropriate sentencing guidelines range. *See People v. Babcock,*
469 Mich. 247, 255, n. 7; 666 N.W. 2d 231 (2003)(citing M.C.L.A. 769.34(2)).
The maximum sentence is not determined by the trial judge but is set by law. See
*People v. Claypool,* 470 Mich. 715, 730, n. 14; 684 N.W. 2d 278 (2004)(citing
M.C.L.A. 769.8).

[5] M.C.L.A. 750.110a(8) permits a trial court, in its discretion, to order a term
of imprisonment for first-degree home invasion to be served consecutively to any
term of imprisonment imposed for any other criminal offense arising from the
same transaction.

There is no constitutional right to allocution under the United States Constitution. *Pasquarille v. United States*, 130 F. 3d 1220, 1223 (6th Cir. 1997)(citing to *Hill v. United States*, 368 U.S. 424, 428 [1962]). Therefore, a trial court's failure to afford a defendant the right to allocution raises neither a jurisdictional or constitutional error cognizable on habeas review. *See e.g. Cooey v. Coyle,* 289 F. 3d 882, 912 (6th Cir. 2002)(declining to issue certificate of appealability on denial of allocution claim).

In his tenth claim, petitioner alleges that his re-sentences were based on two false entries entered in to his Pre-Sentence Investigation Report: (1) that he had outstanding felony warrants in the 80th District Court and (2) a claim by Donna Moritz that petitioner was affiliated with the Highwaymen Motorcycle Club.

A criminal defendant possesses a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)). In order to prevail on a claim that a trial court relied on inaccurate information at sentencing, a habeas petitioner must demonstrate that the sentencing court relied upon this information and that it was materially false. *Collins v. Buchkoe*, 493 F. 2d 343, 345-346 (6th Cir. 1974). Where a petitioner fails to demonstrate in his or her petition that the sentencing court relied upon

materially false information in imposing sentence, this claim is without merit. *See Thomas v. Foltz*, 654 F. Supp. 105, 108 (E.D. Mich. 1987).

The Court reviewed the re-sentencing transcript from November 16, 2006. (See Tr. 11/16/06).  The judge did not mention the alleged outstanding warrants or petitioner's alleged membership in a motorcycle gang when he re-sentenced petitioner.  Petitioner failed to show that the judge used inaccurate information in re-sentencing petitioner.

To the extent that petitioner challenges the accuracy of the pre-sentence investigation report, he would not be entitled to relief.  There is no federal constitutional right to a pre-sentence investigation and report. *See Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001).  Therefore, the mere presence of hearsay or inaccurate information in a pre-sentence report does not constitute a denial of due process so as to entitle a petitioner to habeas relief. *Id.*

**C.  Claim # 7.  The ineffective assistance of trial counsel claims.**

In his seventh claim, petitioner alleges that he was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*,

21

466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong

presumption that counsel's behavior lies within the wide range of reasonable

professional assistance. *Id.*  In other words, petitioner must overcome the

presumption that, under the circumstances, the challenged action might be

sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must

show that such performance prejudiced his defense. *Id.*  To demonstrate

prejudice, the defendant must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694.

Petitioner first contends that trial counsel was ineffective for failing to raise

a defense that petitioner was Donna Moritz's legal guardian and therefore had

legal authority over her, in order to raise a defense to the kidnapping charge that

Ms. Moritz consented to being moved by petitioner.

"Consent, if not obtained by fraud nor extorted by duress or by threats, is a

complete defense to kidnapping." *People v. LaPorte*, 103 Mich. App. 444,

448-49, 303 N.W.2d 222, 224 (1981).  There was evidence in this case that

petitioner pointed a firearm at Donna Moritz, leading to the inference that Ms.

Moritz only agreed to go with petitioner because she had been threatened.  The

Supreme Court "has never required defense counsel to pursue every claim or

defense, regardless of its merit, viability, or realistic chance for success."

*Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009).  Trial counsel could have

22

decided, based on the facts in this case, that consent would not be a viable defense to the kidnapping charge.

Petitioner next claims that trial counsel was ineffective for failing to cross-examine Donna Moritz about a prior false allegation of kidnapping, felonious assault, stalking, and home invasion against petitioner.

Petitioner is not entitled to relief. Petitioner presents no evidence that Donna Moritz's prior allegations against petitioner were false. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Evidence that petitioner had previously been accused of these same crimes by Donna Moritz could have been potentially damaging. Because this evidence would have been extremely damaging to petitioner, counsel was not ineffective for failing to use it to impeach Ms. Moritz. *See e.g. U.S. v. Munoz,* 605 F. 3d 359, 382 (6th Cir. 2010).

Petitioner lastly claims that the cumulative nature of the errors deprived him of the effective assistance of counsel. Because the individual claims of ineffectiveness alleged by petitioner are without merit, petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance of counsel. *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000).

### D. Claims # 8 and # 9. The prosecutorial misconduct claims.

In his eighth and ninth claims, petitioner alleges prosecutorial misconduct.

23

In his eighth claim, petitioner claims that the prosecutor presented perjured testimony from Officer Sean Bitgood.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F. 3d at 343. Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury. *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001).

24

Petitioner claims that Officer Bitgood committed perjury by testifying that when he interviewed petitioner's minor children at the hospital, they told him that petitioner was the one who fired shots in the truck.  In support of his claim, petitioner notes that Officer Bitgood did not mention these conversations in his preliminary complaint report.  Officer Bitgood admitted on cross-examination that his conversations with petitioner's children did not appear in his police report, but that this was his personal recollection from his discussions with them at the hospital.

Petitioner presented no evidence that Officer Bitgood testified falsely about his conversations with petitioner's children.  Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971).  More importantly, assuming that Officer Bitgood testified falsely, petitioner is still not entitled to habeas relief on his perjury claim, because he has failed to show that the prosecutor knew that Officer Bitgood had testified falsely on this matter. *See Rosencrantz v. Lafler,* 568 F. 3d 577, 587 (6th Cir. 2009).

In his ninth claim, petitioner claims that the prosecutor failed to disclose a plea agreement made by the prosecutor in Gladwin County to drop charges of operating under the influence of liquor and driving on a suspended license against Donna Moritz if she would agree to testify against petitioner in Macomb County.

25

"It is well established that an express agreement between the prosecution and a witness is possible impeachment material that must be turned over under *Brady* [*v. Maryland*]." *Bell v. Bell*, 512 F. 3d 223, 233 (6th Cir. 2008)(citing *Giglio v. United States*, 405 U.S. at 154-55).

Petitioner's claim that the Gladwin County prosecutor offered to drop charges against Donna Moritz for her to testify in Macomb County against petitioner is conclusory and unsupported.  Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico,* 455 F. 3d 722, 733 (6th Cir. 2006).  The only evidence in support of petitioner's claim is an unsworn letter signed by "the Comeback Kid", which is purportedly Donna Moritz's nickname.  In this letter, the writer indicates that she "would not have to go to jail" if she testified against petitioner. [6]  This letter is not signed in Donna Moritz's name, was not notarized or authenticated.  Moreover, the 80th District Court docket sheet that petitioner attached to his supplemental brief indicates that Donna Moritz plead guilty to a probation violation and served jail time, which would seem to contradict the assertion contained in the letter that the prosecutor agreed that Ms. Moritz would not serve jail time if she testified against petitioner.  Petitioner is not entitled to relief on this claim.

---

[6]  See Petitioner's Appendix J, attached to the *pro se* amended habeas petition.

**E.  Claim # 11.  The ineffective assistance of appellate counsel claim.**

Petitioner lastly contends that appellate counsel was ineffective for failing to raise his third, seventh, eighth, ninth, and tenth claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  This Court has already determined that petitioner's third, seventh, eighth, and ninth claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in her handling of petitioner's direct appeal.  Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

**IV.  ORDER**

**IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR**

**WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED.  UNLESS THE**

**STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN**

**NINETY DAYS OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A**

**WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY**

**FORTHWITH.**

S/Arthur J. Tarnow
HONORABLE ARTHUR J. TARNOW
SENIOR UNITED STATES DISTRICT JUDGE

Dated: March 22, 2016

28